UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOANNE H.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:23-CV-00015 EAW

## **INTRODUCTION**

Represented by counsel, Plaintiff Joanne H. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 10), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is granted in part, the Commissioner's motion (Dkt. 10) is denied, and the case is remanded for further administrative proceedings.

## BACKGROUND

Plaintiff protectively filed her application for DIB on March 5, 2020. (Dkt. 5 at 18, 241-47).[1] In her application, Plaintiff alleged disability beginning June 2, 2013. (*Id.* at 18, 241). Plaintiff's application was initially denied on August 18, 2020. (*Id.* at 18, 113-20). A telephonic hearing was held before administrative law judge ("ALJ") Kevin Kenneally on October 22, 2021. (*Id.* at 43-86). On November 4, 2021, the ALJ issued an unfavorable decision. (*Id.* at 18-27). Plaintiff requested Appeals Council review; her request was denied on November 7, 2022, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-12). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

I. **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2017. (Dkt. 5 at 20). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from her alleged onset date of June 2, 2013, through her date last insured of December 31, 2017. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: GERD, migraines, hypertension, anemia, hypothyroidism, polymyalgia, history carpal tunnel syndrome, adjustment disorder with mixed anxiety and depressed mood, and obesity. (*Id.*). The ALJ further found that Plaintiff's right shoulder pain, chest pain, and obstructive sleep apnea were non-medically determinable impairments. (*Id*. at 20-21).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*.). The ALJ particularly considered the criteria of Listings 4.00, 7.05, 11.00, 12.04, and Plaintiff's obesity in reaching his conclusion. (*Id.* at 21-23).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except:

> can occasionally push, pull, operate controls with the bilateral upper and lower extremities; can frequently handle, finger, feel bimanually; can occasionally climb ramps and stairs; can never climb ropes, ladders, scaffolds; can occasionally balance, stoop, kneel, crouch, crawl; can never be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle; no exposure to vibrations as well as loud and very loud noise levels; must have access to a bathroom at the work site; is limited to performing simple routine tasks and making simple work related decisions; in addition to normal breaks would be off task 5% of the time in an 8 hour workday.

(*Id.* at 23). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 25).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of labeler, small product assembler, and

order checker. (*Id.* at 26). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 27).

## II. Remand of This Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that the ALJ failed to obtain medical opinion evidence related to Plaintiff's impairments and inappropriately crafted the RFC based upon his own lay interpretation of the evidence. For the reasons explained below, the Court finds that the RFC is not supported by substantial evidence and this error requires remand for further administrative proceedings.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). "[T]he ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). In performing this task, the ALJ must consider and assess the medical opinions in the record. *Nusreta D. o/b/o D.J. v. Comm'r of Soc. Sec.*, No. 6:19-CV-06270 EAW, 2021 WL 972504, at *4 (W.D.N.Y. Mar. 16, 2021).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Further, when a medical source provides one

or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 404.1520c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at § 404.1520c(b). "Although the new regulations eliminate the perceived hierarchy of

medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.*

Indeed, because an ALJ is not a medical professional, he "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted); *see also Soropoulos v. Comm'r of Soc. Sec.*, No. 22-CV-8688 (RWL), 2023 WL 8448211, at *9 (S.D.N.Y. Dec. 6, 2023) ("Put another way, ALJs may not, of course 'play doctor' by using their own lay opinions to fill evidentiary gaps in the record." (quoting *Russ v. Commissioner of Social Security*, 582 F. Supp. 3d 151, 164 (S.D.N.Y. 2022))). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted); *Arias v. Saul*, No.

l8-cv-1296 (KAM), 2020 WL 1989277, at *7 (E.D.N.Y. Apr. 25, 2020) ("The ALJ should have obtained a medical opinion from a qualified source, as her RFC could not stand if unsupported by at least one medical opinion."). "Where, however, the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (quotations, alteration, and citations omitted). In particular, a formal medical opinion is not necessary "when the record is clear and contains some useful assessment of the claimant's limitations from a medical source sufficient to support the RFC finding." *Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp. 3d 122, 127 (W.D.N.Y. 2018) (citation omitted).

In addition, "[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ." *Rosa v. Callahan*, 168 F.3d at 7 n.5 (internal quotation marks and citation omitted).

Here, Plaintiff argues that the lack of discussion of any medical opinion evidence regarding Plaintiff's physical and mental limitations triggered an obligation by the ALJ to further develop the record, warranting remand. She also argues that to the extent that

opinion evidence existed in the record, the ALJ was obligated to discuss it. On these facts, the Court agrees.

In his decision, the ALJ found Plaintiff's impairments of GERD, migraines, hypertension, anemia, hypothyroidism, polymyalgia, history carpal tunnel syndrome, and obesity to be severe. (Dkt. 5 at 23). The ALJ outlined the diagnoses and treatment received by Plaintiff for each of these conditions. (*Id.* at 24). He noted that Plaintiff was treated for chronic GERD and experienced symptoms twice a week, but that her symptoms were generally treated conservatively with medication. (*Id.*). He found her hypertension and hypothyroidism to be managed with medication, with only occasional episodes of uncontrolled symptoms. (*Id.*). The ALJ noted that Plaintiff was treated for carpal tunnel since she was 21 years old and wore bilateral wrist braces and took Motrin for pain. (*Id.*). The ALJ indicated that Plaintiff's anemia and migraines were treated with blood transfusions and vitamin shots, and that her migraines were treated with ibuprofen. (*Id.* at 25).

The ALJ also addressed Plaintiff's mental impairments and considered their severity in connection with his assessment of whether Plaintiff satisfied Listing 12.04. The ALJ found Plaintiff to have a moderate limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (*Id.* at 22).

The ALJ explained the basis for the RFC as follows:

> Based on the foregoing, the undersigned finds [Plaintiff] has the above residual functional capacity assessment, which is supported by the objective

> treatment record and treatment history. Given [Plaintiff's] history of carpal tunnel syndrome, anemia and polymyalgia, the undersigned finds that the record supports limiting [Plaintiff] to light work with the aforementioned environmental and postural limitations due [to] fatigue and pain and swelling in the hands. In addition, due to [Plaintiff's] GERD, the record supports access to a bathroom while at the work site. Lastly, given [Plaintiff's] fatigue and mental impairments, the undersigned finds that the record supports the aforementioned mental limitations in addition to the off task time.

(*Id.* at 25). The ALJ did not address any medical opinion evidence to support the RFC determination.

The record does reflect that at the hearing, the ALJ took steps to develop the record. He asked counsel whether any documents were outstanding that needed to be part of the record and questioned Plaintiff about her physical and mental limitations. *See Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016) (duty to develop record includes "the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity" (citation omitted)). However, the ALJ's duty to develop the record does not apply only at the administrative hearing. The ALJ is required to "develop a claimant's complete medical history," including by "obtain[ing] a claimant's medical records and reports," *id.* at 261 (citations omitted), and can include a need to obtain medical opinion evidence, *Lilley v. Berryhill*, 307 F. Supp. 3d 157, 161 (W.D.N.Y. 2018). *See also Alessandro A. v. Comm'r of Soc. Sec.*, No. 21-CV-00393-FPG, 2023 WL 4757603, at *3 (W.D.N.Y. July 26, 2023) ("Where the administrative record does not contain a medical source opinion about the claimant's functional limitations, an ALJ is generally required to 'recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing' to

fully develop the record." (quoting *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *22 (W.D.N.Y. Mar. 6, 2015))).

While in some cases, the ALJ retains the discretion to make a common sense determination of Plaintiff's RFC without obtaining medical opinion evidence, this does not appear to be such a case. It is true that that "under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment[.]" *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014) (quotation and citation omitted). However, "the leeway given to ALJs to make common sense judgments does not typically extend to the determination of mental limitations, which are by their very nature highly complex and individualized." *Lilley,* 307 F. Supp. 3d at 161 (quotations omitted); *Merriman v. Comm'r of Soc. Sec.,* No. 14 Civ. 3510 (PGG/HBP), 2015 WL 5472934, at *19 (S.D.N.Y. Sept. 17, 2015) ("[T]he duty to develop the record is particularly important where an applicant alleges [s]he is suffering from a mental illness, due to the difficulty in determining whether these individuals will be able to adapt to the demands or stress of the workplace." (quotations, citation, and alteration omitted)). This is because "the effect a mental impairment has on one's ability to work is not the sort of inquiry susceptible to lay evaluation" and accordingly "[w]here serious mental illness is at issue, the ALJ may not make . . . seemingly common-sense judgments about a claimant's abilities." *Stoeckel v. Comm'r* of Soc. Sec., No. 18-CV-1475-FPG, 2019 WL 5445518, at *3 (W.D.N.Y. Oct. 24, 2019); *James R. v. Comm'r of Soc. Sec.*, No. 18-CV-06497-FPG, 2021 WL 3361161, at *3 (W.D.N.Y. Aug. 3, 2021) ("The ALJ could not

assess the scope of Plaintiff's mental impairments solely through her own common sense and lay judgment."). Indeed, in the case of mental health impairments—which are at issue in this case—the opinions offered by treating providers are "all the more important," given those impairments are "not susceptible to clear records such as x-rays or MRIs," and "depend almost exclusively on less discretely measurable factors, like what the patient says in consultations." *Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 122 (2d Cir. 2018).

Here, as discussed, the ALJ found at step two that in addition to a number of physical impairments, Plaintiff had multiple severe mental impairments, and the ALJ concluded that the mental health limitations were sometimes "moderate." Assessments from the state agency review physicians indicate that there was insufficient evidence for them to evaluate Plaintiff's claim during the relevant time period. (Dkt. 5 at 94, 106-07). The Commissioner concedes that the ALJ did not assess any medical opinion evidence in his decision but contends that the error was harmless because there was ample evidence in the administrative record upon which to base his determination. As noted, common sense determinations are significantly more challenging where a combination of physical and mental impairments are involved and the ALJ's failure to even address the absence of opinion evidence here was erroneous. *Arias*, 2020 WL 1989277, at *8 ("Here, the record is bereft of medical opinions by any qualified medical source regarding plaintiff's limitations. The ALJ, faced with a medical record that documented at least one severe impairment, was obligated to obtain opinion evidence to fill in the gaps in the record. Her failure to do so warrants remand of this case with the direction that the ALJ obtain medical

source statements from treating physicians and/or schedule plaintiff to attend a consultative physical and mental examination.").

Alternatively, the Commissioner argues that there was no meaningful error from the lack of opinion evidence discussed in the ALJ's decision because the record did contain "precisely one medical opinion: the May 2014 opinion from Plaintiff's primary care physician, David Clifford, MD." (Dkt. 10-1 at 3). Specifically, on May 9, 2014, Dr. Clifford completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination form (Dkt. 5 at 617-18), in which he checked boxes indicating that Plaintiff had no evidence of limitations in physical or mental functioning. The Commissioner contends that because Dr. Clifford's opinion does not contradict the ALJ's finding that Plaintiff can perform a range of light work, any requirement that the ALJ expressly discuss and consider it was obviated.

As set forth above, the Commissioner's argument is directly at odds with the regulations requiring an ALJ to consider and explain the persuasiveness of all medical opinion evidence in the record. *See Lora R. v. Comm'r of Soc. Sec.*, No. 1:21-CV-344-DB, 2024 WL 113070, at *10 (W.D.N.Y. Jan. 10, 2024) ("Although the ALJ was not required to accept everything about which Dr. Amundson opined, he was required to explain what parts of his opinion he rejected and why. . . . Because the ALJ did not provide any reason for omitting the sit/walk/stand limitation, the Court has no idea whether the ALJ missed it, ignored it, or disagreed with it for some legitimate reason. Accordingly, the Court finds that the ALJ's failure to address this limitation was error." (citations omitted)); *Davis v. Kijakazi*, No. 22-CV-6333 (JLC), 2023 WL 5087625, at *12 (S.D.N.Y. Aug. 9, 2023)

("SSA regulations require the ALJ to explicitly discuss the supportability and consistency of each medical opinion in making the RFC determination, and the failure to do so constitutes legal error."); *Garrett W. v. Comm'r of Soc. Sec.*, No. 19-CV-1091MWP, 2021 WL 821833, at *4 (W.D.N.Y. Mar. 4, 2021) ("Thus, the ALJ's failure to consider the opinions of Faulk and Paarlberg and explain the weight to be assigned to them constitutes an error that, unless harmless, requires remand.").

While a failure to address a single medical opinion may in certain circumstances constitute harmless error, here the error by the ALJ was compounded by the fact that he did not rely on any medical opinion at all in the decision, yet crafted a very specific RFC. *See Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (holding that "while the ALJ may have given appropriate reasons for not according controlling weight to some of the opinions of Riccobono's treating physicians, she must still base her conclusion on *some* medical opinion or otherwise articulate the overwhelmingly compelling reasons for not doing so"); *Hector G. v. Comm'r of Soc. Sec.*, No. 21-CV-1164-RJA, 2023 WL 4485579, at *3 (W.D.N.Y. July 12, 2023) ("While the Commissioner is empowered to make RFC determinations, '[w]here the medical findings in the record merely diagnose claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' the Commissioner generally 'may not make the connection himself.'" (quoting *Wilson*, 2015 WL 1003933, at *21)); *Tanisha W. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00575-TPK, 2023 WL 3579067, at *4 (W.D.N.Y. May 22, 2023) ("The Court has no hesitation in determining that, on the basis of this record -- which contains essentially nothing more than raw medical data -- the ALJ exceeded the scope of his

expertise by crafting a very specific residual functional capacity finding, even one as restrictive as the one in this case.").

For these reasons, on this record, the ALJ was not permitted to rely on his own lay assessment of the medical evidence to assess Plaintiff's RFC, nor is the Court able to conclude that express consideration of Dr. Clifford's opinion was unnecessary on these facts. It is not for the Court to surmise how Dr. Clifford's opinion could have filled any gap in the record and the ALJ's decision does not build a logical bridge making clear the basis for his determination. *See Lilley*, 307 F. Supp. 3d at 160 ("Stated simply, the record lacks a useful medical opinion by any treating or examining source that addresses whether and to what extent plaintiff's mental impairments impact her ability to perform work-related functions. As such, the ALJ was required to obtain a consultative examination and/or seek additional opinion evidence from plaintiff's treating physician."); *Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 237 (W.D.N.Y. 2019) ("'[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review,' and '[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'" (quoting *Loescher v. Berryhill*, No. 16-CV-300-FPG, 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017)). This error warrants remand for further proceedings.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings,

- 17 -

and the Commissioner's motion for judgment on the pleadings (Dkt. 10) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: January 29, 2024
Rochester, New York